# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

LOUVENIA ARMSTRONG, et al.,    )
                                       )
        Plaintiffs,           )      Case No. 3:03-1250
                                       )      Judge Trauger
v.                                   )
                                       )
WHIRLPOOL CORPORATION,     )
                                       )
        Defendant.         )

## MEMORANDUM

Pending before the court is the Plaintiffs' Motion for Class Certification (Docket No. 248), to which the defendant has responded (Docket No. 280) and the plaintiffs have replied (Docket No. 286). For the reasons discussed herein, the plaintiffs' motion will be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Each of the named plaintiffs in this case currently is, or formerly was, employed at the defendant's manufacturing facility in LaVergne, Tennessee. (*See* Docket No. 242 ¶ 2.) All African-Americans, the plaintiffs claim that the defendants subjected them to racial harassment in violation of both 42 U.S.C. § 1981 (2000) ("Section 1981") and 42 U.S.C. § 2000-e (2000) ("Title VII"). (*See* Docket No. 250 at 46.)

Specifically, the plaintiffs allege that they were exposed to "a gauntlet of racial discrimination, verbal abuse, racist graffiti and hostile treatment." (*See* Docket No. 242 ¶ 3.; *see also* Docket No. 250 at 22-43 (complaining about, among other things, racial slurs, discriminatory comments, and racially offensive graffiti).) They strenuously assert that the racial

harassment that they allegedly experienced was due to the defendant's lack of appropriate policies prohibiting racial harassment and discrimination. (*See* Docket No. 250 at 7.)

The plaintiffs now move to certify their claims as a class action under Rule 23(b)(2) and Rule 23(b)(3). (*See id.* at 56, 62.)

## ANALYSIS

The principal purpose of class actions is to achieve efficiency and economy of litigation, both with respect to the parties and the courts. *See Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 159 (1982). The Supreme Court has observed that, as an exception to the usual rule that litigation is conducted by and on behalf of individual named parties, "[c]lass relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *Id.* at 155 (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700-01 (1979)). The Court directs that, before certifying a class, district courts must conduct a "rigorous analysis" of the prerequisites of Rule 23 of the Federal Rules of Civil Procedure. *See Falcon,* 457 U.S. at 161. The Sixth Circuit has stated that district courts have broad discretion in deciding whether to certify a class, but that courts must exercise that discretion within the framework of Rule 23. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002); *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996).

Although a court considering class certification may not inquire into the merits of the underlying claim, a class action may not be certified merely on the basis of its designation as such in the pleadings. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974); *In re Am. Med. Sys., Inc.*, 75 F.3d 1079. In evaluating whether class certification is appropriate, "it may be necessary for the court to probe behind the pleadings . . . ." *Falcon,* 457 U.S. at 160; *see also*

2

*In re Am. Med. Sys., Inc.*, 75 F.3d at 1079; *Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir. 1974).   Moreover, the party seeking class certification bears the burden of establishing its right to it.  *See Alkire v. Irving,* 330 F.3d 802, 820 (6th Cir. 2003); *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 522 (6th Cir. 1976).

I.      **The plaintiffs have demonstrated that they meet the requirements of Rule 23(a).**

Any party seeking class certification must meet all four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—before a class can be certified.  *See* Fed. R. Civ. P. 23(a); *In re Am. Med. Sys., Inc*., 75 F.3d at 1079.  The court will discuss each of these prerequisites in turn.

A.      **The plaintiffs have demonstrated numerosity.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In *Senter,* the Sixth Circuit explained that there is "no specific number below which class action relief is automatically precluded" and that it is the circumstances of the case, not a strict numerical test, that determines impracticability of joinder.  *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976).  When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone.  *In re Am. Med. Sys., Inc*., 75 F.3d at 1079.

Apart from class size, factors that courts should consider in determining whether joinder is impracticable include the geographical dispersion of class members, the injunctive nature of the action, how easily class members can be identified, judicial efficiency, fear of harassment, and the relatively small size of individual claims.  *See* Alba Conte & Herbert Newberg, 1

3

Newberg on Class Actions § 3:6 (4th ed. 2003) (hereinafter "Newberg"); *see also Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 286 (W.D. Mich. 2001).

The plaintiffs base their assertions that they meet the numerosity requirement on statistics garnered from "a sampling of Whirlpool's EEO-1 reports from the years 2000 to 20006." (*See* Docket No. 250 at 48.) According to these statistics, claim the plaintiffs, the defendant's LaVergne facility employs between 192 and 242 African-American employees at any given time. (*See id.*) Given this estimate, they assert, "one can reasonably infer that the proposed class, which includes present and former employees at the plant, would include over 300 individuals." (*See id.*) To the plaintiffs, this large number of putative class members itself demonstrates that joinder is impracticable. (*See id.*)

Relying on a recent Sixth Circuit case, the defendant contests the plaintiffs' claims about numerosity on the grounds that the plaintiffs have not linked the gravamen of their claims, *i.e.*, racial harassment, to the class of individuals they hope to represent, *i.e.*, all non-managerial, hourly African-Americans employed at the defendant's LaVergne facility. (*See* Docket No. 280 at 46-48 (citing *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005) (indicating that a plaintiff seeking to establish numerosity "must offer something more than bare speculation to link the gravamen of her claim for liability to the class of individuals she purports to represent")).) It also alleges that joinder is not appropriate here because most, if not all, of the plaintiffs likely live in an area of Tennessee that is convenient to LaVergne, given that they all either currently work at the defendant's LaVergne facility or did so at some time during the class period. (*See id.* at 49-50.) The plaintiffs do not contest the fact that most putative class members live in the LaVergne area.

4

In *Golden*, the Sixth Circuit upheld a finding that a plaintiff had not demonstrated numerosity where the putative class encompassed all tenants in Columbus, but the plaintiff did not allege that the injury of which she was complaining could potentially apply to each tenant. *See Golden*, 404 F.3d at 966. Instead, the plaintiff claimed only that the injury could impact tenants whose predecessors or landlords were indebted to the city. *See id.* In contrast, that court found that numerosity existed in the context of an employment discrimination lawsuit where a plaintiff proposed a class that included all African-African employees at a particular automotive plant, which amounted to an estimated fourteen percent of the plant's total workforce. *See Senter*, 532 F.2d at 523. In so finding, the court determined that "it would be reasonable to infer that a substantial number of these individuals are includable in the class eligible for relief on the basis of the [plaintiff's] action and that joinder would be impracticable." *Id.; see also Bacon v. Honda of Am. Mfg. Co.*, 370 F.3d 565, 570 (6th Cir. 2002) (finding numerosity in an employment discrimination case where the plaintiff proposed a class of "some 800 current and former . . . employees, a number well beyond the point that joiner would be feasible").

Unlike in *Golden*, where the wrong about which the plaintiffs complained could not possibly apply to each individual in their class, here, as in *Senter*, the court may reasonably infer that a substantial number of the plaintiffs are "includable in the class eligible for relief." *Compare Golden*, 404 F.3d at 966, *with Senter*, 532 F.2d at 523. Given that the "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)" and that the plaintiffs here allege a potential class of over 300 individuals, the plaintiffs have demonstrated that numerosity exists. *See Bacon*, 370 F.2d at 570.

Case 3:03-cv-01250   Document 290   Filed 03/01/07   Page 5 of 29 PageID #: 3236

**B.     The plaintiffs have demonstrated commonality.**

In order to establish commonality, the plaintiffs must demonstrate that "there are questions of law or fact common to the class" under Rule 23(a)(2).  *See* Fed. R. Civ. P. 23(a)(2). One leading treatise characterizes the commonality prerequisite as interdependent with the numerosity prerequisite.  *See* Newberg § 3:10.  It notes that these two factors form the conceptual basis for determining whether a class action is the appropriate vehicle for the resolution of a particular matter.  *See id.*

The Sixth Circuit has characterized the commonality requirement as "qualitative rather than quantitative" and has observed that "[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common."  *See Bacon*, 370 F.3d at 570; *In re Am. Med. Sys.*, *Inc.*, 75 F.3d at 1080.  However, that court has also observed that "[c]onclusory allegations and general assertions of discrimination are not sufficient to establish commonality."  *See Bacon*, 370 F.3d at 571.  It has also noted that not every common issue will satisfy this requirement but rather that "[w]hat we are looking for is a common issue the resolution of which will advance the litigation."  *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

In *Bacon*, the Sixth Circuit listed a number of "concerns" that are appropriately addressed in an employment discrimination context when considering commonality: (1) whether the nature of the alleged unlawful employment practice genuinely had a class-wide impact; (2) whether the employment practices affecting the class were uniform or diverse, given factors such as, among others, the size of the work force and the range of employment conditions; (3) whether class members' treatment would be likely to involve common questions; (4)  whether the relevant

employment and personnel policies and practices were centralized and uniform; and (5) whether similar conditions prevailed throughout the time period covered by the allegations. *Bacon*, 370 F.3d at 570.

Here, the plaintiffs argue that questions of law and fact that are common to the entire class predominate over questions that affect only individual class members. Their depictions of the issues surrounding the common policies and practices to which they were purportedly subjected range from the fairly broad, *e.g.*, whether the defendant "maintain[ed] a racially hostile work environment during the liability period," to the relatively narrow, *e.g.*, whether the defendant "subjected all of them to [a hostile work] environment because of [its] . . . fail[ure] to properly address racial harassment, including both verbal abuse and pervasive graffiti" and whether this failure was perpetuated by the defendant's delegation to its supervisors of discretionary authority to discipline employees who had allegedly engaged in racial harassment or its lack of policies that prohibited racial harassment. (*See* Docket No. 286 at 14; Docket No. 250 at 49-52.)

The defendant, in response, claims that "the varying frequency and degrees of severity between purported class members' allegations of harassment highlights the individualized nature of these claims, thereby defeating commonality." (*See* Docket No. 280 at 53.) It also challenges the plaintiffs' assertions about its anti-harassment policies or lack thereof. (*See id.* at 53-55.) In addition, it notes that the policies and practices under which each plaintiff worked vary depending on the time frame in which he or she was employed, as its policies and practices have significantly changed over time. (*See id.* at 55.)

7

The more tailored version of the plaintiffs' assertions provides a question that is common to each member of the putative class. The plaintiffs have adduced evidence that the defendant, acting though its managers, failed to promptly and appropriately respond to their allegations of racial harassment at the hands of coworkers and supervisors alike.

For instance, plaintiff Louvenia Armstrong testified that, in the summer of 2003, she complained to her immediate supervisor, Steve Tidwell, and to another supervisor, Bill Westberry, about "the racial slurs and cursing and jokes that [white employee] Dale Travis was doing all day long." (*See* Docket No. 276, Ex. 58, Armstrong Dep. 61.) According to Armstrong, the two supervisors asked Travis to repeat his comments and, upon hearing them, laughed and joked about them and failed to address the matter further. (*See id.*) Armstrong further alleges that she complained to Tidwell about Travis's racial harassment two or three times every week, but that Travis was never disciplined for his conduct. (*See* Docket No. 250 at 22-23.)

Similarly, plaintiff Betty Talley alleges that she complained to supervisors Bob Cypress and Jack Ethridge about racist jokes that her white coworker, Robert Quiggle, told prior to his 2005 transfer "to the plant." (*See* Docket No. 250 at 33; Docket No. 242 at 20.) Talley asserts that, despite her complaints, Quiggle appears to never have been disciplined for his jokes, and his racist remarks continued. (*See* Docket No. 250 at 33.) Additionally, she alleges that, at various times, she witnessed Cypress, Ethridge, and floor supervisor Susie Powell laughing at Quiggle's racist jokes. (*See id.*)

The plaintiffs claim that managerial failures such as these stemmed, in part, from the defendant's lack of (1) policies that prohibited racial harassment; and (2) practices that allowed

8

employees to enter complaints of racial harassment and advised supervisors about how to appropriately address such allegations. (*See id.* at 49-50 (describing in detail the plaintiffs' grounds for believing that the defendant lacked anti-harassment policies and practices).) The defendant contests the plaintiffs' assertions and notes that its policies and practices varied throughout the class period, particularly after 2005, when it implemented an updated anti-discrimination policy. (*See* Docket No. 280 at 54-55.)

It is not the court's place, at this stage of the proceedings, to judge the relative merits of the plaintiffs' assertions when compared to the defendant's. *See Eisen*, 417 U.S. at 177 ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). Moreover, the fact that the defendant allegedly revamped its anti-harassment policies in 2005, long after the institution of the instant lawsuit, cannot defeat the plaintiffs' assertions that they all suffered under the common practices of the defendant. *See Senter*, 532 F.2d at 524 ("[W]hen [personnel] decision[s are] made as part of class-wide discriminatory practices, courts bear a special responsibility to vindicate the polices of [Title VII] . . . .").

In its attempts to defeat commonality, the defendant relies, in part, on *Elkins v. Am. Showa, Inc.*, 219 F.R.D. 414, 424 (S.D. Ohio 2002). The plaintiffs in *Elkins* alleged that the defendant subjected each of them to a sexually hostile work environment, which it knew about but failed to remedy. *See id.* at 423. The court in *Elkins* found that the plaintiffs' claims lacked commonality because they could not show that, "as to the class generally, defendant had a practice of not effectively responding to complaints of sexual harassment." *See id.* at 424. As

9

indicated above, however, the plaintiffs in this case have offered evidence that the defendant subjected them to a general practice of not responding to their complaints of a hostile work environment that was created, or at least tolerated, by their supervisors. (*See* Docket No. 250 at 49-50); *see also Eisen*, 417 U.S. at 177 (reminding courts not to improperly delve into the merits of a case at the class-certification stage).

Thus, like other cases in which the plaintiffs have put forth such evidence, the plaintiffs here have demonstrated that commonality exists.[1] *See Cervantes v. Sugar Creek Packing Co.*, 210 F.R.D. 611, 624 (S.D. Ohio 2002) ("The testimony of the plaintiffs supports the complaint's assertion that [the defendant's] practice was to discriminate against Hispanic employees and create, or at least tolerate, a hostile work environment."); *Bremiller v. Cleveland Psychiatric Inst.*, 195 F.R.D. 1, 21 (N.D. Ohio 2000) (finding that, while "some facts concerning alleged incidents of . . . harassment in this action differ from one another and appear to be more severe than others," such is "insufficient to defeat the commonality requirement" where "the questions common to all members of Plaintiff's class will relate to the allegedly hostile environment caused by . . . harassment at [the plaintiffs' place of employment] and Defendants' liability for

---

[1]A brief review of some of the concerns highlighted by the Sixth Circuit in *Bacon* leads to the same conclusion. *Bacon*, 370 F.3d at 570. For instance, if the plaintiffs' allegations about the defendant's practices at its LaVergne facility are true, such practices had a class-wide impact, as they affected every LaVergne employee. (*See id.* (listing as a factor for consideration "whether the nature of the alleged unlawful employment practice genuinely had a class-wide impact").) As such, the class members' treatment under these practices would be likely to involve common questions. (*See id.* (listing as a factor for consideration "whether members' treatment would be likely to involve common questions").) If the defendant's practices, as the plaintiffs allege, stemmed in part from its lack of an anti-racial harassment policy, the lack of such a policy could be considered to be "centralized and uniform." (*See id.* (listing as a factor for consideration "whether the relevant employment and personnel policies and practices were centralized and uniform").)

such harassment"); *see also Senter*, 532 F.2d at 523 (finding that commonality existed where "the obvious thrust of the [plaintiff employee's] complaint is that [the defendant] has engaged in a general pattern and practice of discriminating against minority employees in making promotions").

**C.     The plaintiffs have demonstrated typicality.**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Together with Rule 23(a)(4)'s requirement that the representative party adequately protect the interests of the class, this typicality requirement focuses on the characteristics of the class representatives.  *See* Newberg § 3:13.  The Sixth Circuit has adopted Newberg's characterization of the typicality requirement. As depicted in this characterization, typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, such that the court may properly attribute a collective nature to the challenged conduct.  In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong done to the plaintiff.  Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.  *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1082 (citing 1 Alba Conte & Herbert Newberg, Newberg on Class Actions § 3:13 (3d ed. 1992)).

11

In *Sprague*, 133 F.3d at 399, the Sixth Circuit succinctly framed the typicality requirement: "as goes the claim of the plaintiff, so go the claims of the class." In other words, typicality cannot be established where a named plaintiff who proves his own claim does not necessarily prove anyone else's claim.

The plaintiffs assert that typicality exists in their case because their claims "arise from the same employment practices that give rise to the claims of the other class members . . . and rest on the same legal theory as those of the class." (Docket No. 250 at 54.) They note that "class members will not allege any wrongs other than those the plaintiffs allege." (Docket No. 286 at 14.) To the defendant, typicality is lacking in this case because the plaintiffs' claims "are too dependent upon the individual circumstances surrounding each of their experiences" and because "the legal standard by which each class member's claim is judged will differ . . . depending upon whether the conduct in question was perpetrated by a supervisor or a coworker." (Docket No. 280 at 57.)

As discussed above, the plaintiffs' claims, although perhaps factually disparate to some extent, are bound by (1) their common assertions about the defendant's alleged practice of failing to respond to their complaints about racial harassment that was perpetuated, or at least tolerated, by their supervisors; and (2) their shared allegations that this practice resulted, at least in part, from the defendant's lack of a policy that prohibited racial harassment. In this sense, the plaintiffs' claims all arise from the same course of conduct and stem from the same legal theory. *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. As go the claims of one plaintiff with respect to the defendant's practices and policies, so will go the claims of the class. *See Sprague*, 133 F.3d at 399. Thus, the plaintiffs have met their burden of establishing typicality.

12

**D.      The plaintiffs have demonstrated adequate representation.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has recognized that this adequacy of representation requirement encompasses two criteria: (1) the representative plaintiffs must have common interests with unnamed members of the class; and (2) it must appear that the representative plaintiffs will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525. The first criterion, that of common interest, essentially requires that there be no antagonism or conflict of interest between the representative plaintiffs and the other members of the class that they seek to represent. *See In re Am. Med. Sys.*, 75 F.3d at 1083. The second criterion inquires into the competency of counsel. *See id.* The Sixth Circuit has observed that the adequacy of representation prerequisite overlaps with the typicality requirement because, "in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id.* That court has also noted that this prerequisite is essential to due process because a final judgment in a class action is binding on all class members. *Id.*

As to the first criterion, the plaintiffs assert that they have no antagonism of interest with respect to the putative class members because both they and the putative members "seek[] to remedy Whirlpool's discriminatory employment practices so that racially hostile conditions . . . will be eradicated." (*See* Docket No. 250 at 55.) The defendant believes that conflicts exist within the class because the interests of the former employees, which the defendant hypothesizes will be primarily financial, could conflict with the interests of the current employees, which the defendant sees as more focused on obtaining injunctive relief. (*See* Docket No. 280 at 58.) The

13

defendant also speculates as to potential conflicts among the representative plaintiffs themselves, given that, among other things, some of them appear to have used racist language, some of them allegedly feel that their claims against the union should have been pursued, and at least one of them purportedly professed that he was concerned only about the harassment that affected him personally. (*See id.* at 59.) In response, the plaintiffs assert that the defendant's former employees do want its LaVergne facility to be free of discrimination and note that monetary and injunctive relief are not mutually exclusive. (*See* Docket No. 286 at 15.)

This case is not like those cited by the defendant, in which recovery by one part of the class would undermine the interests of another part. (*See, e.g.*, Docket No. 280 at 58 (referring to *Gen. Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 331 (1980) (noting that a conflict could arise between employees and applicants who were denied employment where, if the applicants were granted relief, they would compete with the employees for fringe benefits or seniority)).) Rather, as confirmed by the plaintiffs themselves, the plaintiffs and the putative class members here share a common interest in reforming the environment at the defendant's LaVergne facility and in potentially obtaining monetary damages. *See Leonard v. Southtec*, No. 3:04-0072, 2005 WL 2177013, at *10 (M.D. Tenn. Sept. 8, 2005) (unpublished) (finding that adequate representation existed where current and former employees sought monetary and injunctive relief in an employment discrimination case). Accordingly, the plaintiffs have demonstrated the existence of the adequate representation prerequisite's first criterion.

As to the second criterion, the plaintiffs assert that their class representatives and counsel have aptly demonstrated their adequacy throughout the long history of this litigation. (*See* Docket No. 250 at 55.) Additionally, plaintiffs' counsel has "extensive experience in

employment discrimination and specifically class action litigation before federal courts around the country." (*See id.* at 55-56.) The defendant does not contest the competency of plaintiffs' counsel. Accordingly, the plaintiffs satisfy the second criterion of adequate representation and have, therefore, demonstrated that adequate representation exists in this case.

Having found that the plaintiffs have demonstrated the existence of each Rule 23(a) prerequisite, the court now must determine whether the plaintiffs' case also falls within at least one of the subcategories of Rule 23(b). *See In re Am. Med. Sys.*, 75 F.3d at 1079.

## II. The plaintiffs have not demonstrated that their claims are amenable to certification under any subsection of Rule 23(b).

The plaintiffs suggest that certification of their class is appropriate under both Rule 23(b)(2) and Rule 23(b)(3) or as a hybrid action under both rules combined. (*See* Docket No. 250 at 56, 62, 64.) The court will address each of these options in turn.

### A. The plaintiffs cannot seek certification of their class under Rule 23(b)(2).

Rule 23(b)(2) authorizes "mandatory" class actions under which potential class members do not have an automatic right to notice or a right to opt out of the class. *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 645 (6th Cir. 2006). Certification under this rule is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). In other words, class actions may be maintained under this rule when the primary relief sought is injunctive or declaratory. *See id.*

15

advisory committee's note (noting that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages").

The Sixth Circuit last year created a limitation on Title VII plaintiffs who seek 23(b)(2) certification.  *See Reeb*, 435 F.3d at 651.  In *Reeb*, it found that "claims for individual compensatory damages of members of a Title VII class necessarily predominate over requested declaratory or injunctive relief" and, therefore, that plaintiffs seeking to recover individual compensatory damages cannot do so in the context of a 23(b)(2) class action.  *See id.*

The plaintiffs claim that *Reeb* does not preclude them from bringing a 23(b)(2) action here because, in addition to injunctive and declaratory relief, they seek compensatory and punitive damages only on a "class-wide basis."  (*See* Docket No. 250 at 8.)  Indeed, as noted by the defendant, the plaintiffs, in the wake of *Reeb* and in response to the defendant's motion for a more definite statement as to the nature of the relief they planned to seek "and/or whether [they] intend[ed] . . . to certify a class under Rule 23(b)(3)," amended their Complaint to specify that they sought, under Rule 23(b)(2), only compensatory and punitive damages that "inure[d] to the group benefit."  (*See* Docket No. 280 at 27.  *Compare* Docket No. 165 at 42 (listing, among other things, nominal, compensatory, and punitive damages) *with* Docket No. 242 at 38 (listing, among other things, nominal, compensatory, and punitive damages "that inure to the group benefit").)

The defendant claims that, "when applied to the reasoning in *Reeb*, . . . Plaintiffs' mere claim that their compensatory and punitive damages 'inure to the group benefit' is form over substance and does nothing to render this case compatible with Rule 23(b)(2)."  (Docket No. 280 at 27.)  The court agrees.

16

In *Reeb*, the Sixth Circuit recognized as inuring to the group benefit those claims that are "concomitant with, not merely consequential to, class-wide injunctive or declaratory relief," the computation of damages for which should not be "dependent in any significant way on the intangible, subjective differences of each class member's circumstances." *See Reeb*, 435 F.3d at 647-48 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). The plaintiffs, in attempting to shape their damages to fit within the newly limited rubric of damages allowed under Rule 23(b)(2) after *Reeb*, argue that both their compensatory and their punitive damages claims can be calculated without reference to each class member's particular circumstances. (*See* Docket No. 250 at 58-60.) Because the plaintiffs' claims for compensatory damages cannot be addressed without running afoul of the Sixth Circuit's holding in *Reeb*, the court need not address their claims for punitive damages.

The plaintiffs maintain that their requests for compensatory damages inure to the group benefit because they "may be pursued without the presentation of complex medical or expert testimony" and because the alleged harmed caused by the defendant "is not limited to particular persons directly affected by those acts." (*See* Docket No. 250 at 60-61.) Even if both of these assertions are true, however, the court cannot properly analyze the plaintiffs' claims for compensatory damages without evaluating each plaintiff's individual circumstances. The nature of the compensatory damages available under Title VII is simply too dependent on the circumstances of each individual plaintiff to allow for such a practice. *See* 42 U.S.C. § 1981(b)(3) (2000) (stating that compensatory damages may be awarded for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses"); *Reeb*, 435 F.3d at 651.

17

As recognized by the defendant, any analysis of the compensatory damages due to each plaintiff would require, for instance, a determination as to whether they were exposed to racist graffiti or to Dale Travis's discriminatory conduct and, if so, the effect upon them of that exposure.  (*See* Docket No. 280 at 29.)  Thus, although the plaintiffs assert that they seek only compensatory damages that "inure to the group benefit," a review of the true nature of their claims reveals that the damages they seek fit within *Reeb's* requirements in name only and, instead, are more correctly categorized as individual compensatory damages.  *Reeb*, 435 F.3d at 647-48 (describing damages that "inure to the group benefit").  Accordingly, because "certification of a plaintiffs' class under Rule 23(b)(2) is improper in a Title VII case in which the plaintiffs seek individual compensatory damages," the plaintiffs here cannot seek certification of their claims under Rule 23(b)(2).  *Reeb*, 435 F.3d at 645.

The court must now determine whether the plaintiffs can, instead, seek certification under Rule 23(b)(3).

**B.      The plaintiffs have not demonstrated that Rule 23(b)(3) is an appropriate vehicle for their claims.**

Initially, the court notes the defendant's assertion that the plaintiffs, by not explicitly stating that they were seeking 23(b)(3) certification in their previous filings, have waived their ability to now use this rule as a vehicle for their claims.  (*See* Docket No. 36-38.)  As discussed below, however, the plaintiffs' claims are not appropriate for Rule 23(b)(3) certification.  Thus, the court need not determine whether the plaintiffs have waived their right to seek such certification.

Case 3:03-cv-01250   Document 290   Filed 03/01/07   Page 18 of 29 PageID #: 3249

Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification of a class action where such treatment may nevertheless be convenient and desirable. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (internal quotations omitted). To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common questions must "predominate over any questions affecting only individual members"; and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

Rule 23(b)(3) includes a non-exhaustive list of factors that are pertinent to a court's examination of the predominance and superiority prerequisites: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc.*, 521 U.S. at 615-16.

### 1. The plaintiffs have not demonstrated that common questions predominate over individual issues.

Rule 23(b)(3) parallels the Rule 23(a)(2) commonality requirement in that both rules require that common questions exist, "but [Rule 23](b)(3) contains the more stringent requirement that common issues predominate over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (internal citation omitted); *see also Amchem Prods., Inc.*, 521 U.S. at 623-24

19

(finding that the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement).

Here, the plaintiffs claim that the common issues in their case predominate over the individual ones because "common liability and damages issues . . . concerning Whirlpool's uniform practices and procedures constitute major elements of the class members' claims." (*See* Docket No. 250 at 63.) Specifically, they argue that, because "this case is directed at the practices and procedures at Whirlpool" and because, in their view, "punitive damages can be awarded to the class as a whole without determining liability with respect to individual class members," "those questions concerning Whirlpool's systemic discrimination predominate over individual questions." (*See id.*)

The defendant refutes the plaintiffs' assertions about the predominance of common issues and alleges that "hostile work environment claims tend to require determination of individualized issues, thereby weighing heavily against Rule 23(b)(3) certification." (*See* Docket No. 280 at 39.) The defendant lists a number of issues that, in its opinion, must be individually analyzed with respect to each plaintiff in order to determine whether he or she has made out a valid hostile work environment claim. (*See id.* at 39-40 (listing, among others, issues such as (1) whether the harassment was perpetrated by a coworker or a supervisor; (2) the nature, severity, and duration of the conduct; and (3) whether the defendant knew or should have known about the harassment and yet failed to correct it).) The defendant also takes issue with the plaintiffs' claim that they have pled this case under the pattern-or-practice standard outlined in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360-62 (1977). (*See id.* at 41.)

An examination of the plaintiffs' claims reveals that, despite their strenuous assertion to the contrary, common issues do not predominate over individual issues in this case. The plaintiffs allege that the defendant subjected them to a racially hostile work environment in violation of Title VII and Section 1981. (*See* Docket No. 242 at 34-36.) The court will assume for the sake of analysis that the plaintiffs have properly raised the issue of whether the defendant subjected them to an impermissible pattern or practice of racial harassment. (*See* Docket No. 286 at 10 (reflecting the plaintiffs' arguments that they have "pled the *Teamsters* standard, contrary to Defendant's assertions").)

The plaintiffs have not provided the court with a standard under which to analyze class action, hostile work environment claims brought under a pattern-or-practice theory. The court's research has not uncovered any Sixth Circuit standard for these claims, to which "[t]he typical pattern or practice construct . . . does not wholly apply."[2] *See Bremiller*, 195 F.R.D. at 25.

Other district courts within the Sixth Circuit have indicated that harassment-based class action claims are generally divided into two phases: a liability phase and a relief phase. *See id.*; *see also Elkins,* 219 F.R.D. at 425. At issue in the liability phase is whether "the plaintiff class has established that the employer engaged in a pattern or practice of tolerating . . . harassment." *See Bremiller*, 195 F.R.D. at 25 (quoting *Jenson v. Ellerth Mines*, 139 F.R.D. 657, 665 (D. Minn. 1991)). Factors to be analyzed at this phase mirror those that constitute individual hostile work

---

[2]The applicability of pattern-or-practice theory to discriminatory harassment claims has recently been called into question. *See* Michael Delikat, *Pattern or Practice Litigation*, in Litigating Employment Discrimination and Sexual Harassment Claims 2006, at 21, 28 (PLI Litig. & Admin. Practice Course, Handbook Series No. 8483, 2006) (noting that, while "recently, pattern or practice theory has been extended by some of the federal trial courts to claims of discriminatory harassment . . . no appellate court has yet accepted this application of the theory").

21

environment claims.[3]  *See Bremiller*, 195 F.R.D. at 26-31 (analyzing a class-action harassment

claim and noting that such an analysis focuses on "whether a reasonable [plaintiff] would find

the work environment hostile").  The relief phase evaluates whether each plaintiff subjectively

viewed his or her work environment as hostile.  *See id.* at 26; *see also Elkins*, 219 F.R.D. at 425.

A number of district courts, some within the Sixth Circuit, have found class action hostile

work environment claims to be inappropriate for Rule 23(b)(3) certification because of the

predominance of individual issues in such cases.  In particular, in *Elkins*, the United States

District Court for the Southern District of Ohio found that, even if the plaintiffs were able to

---

[3]A hostile work environment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In order to make out an individual claim that she was subjected to a racially hostile work environment, a plaintiff must demonstrate the following: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment created a hostile working environment; and (5) her employer has *respondeat superior* liability.  *See Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078-79 (6th Cir. 1999); *Williams v. General Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999).

Here, the plaintiffs seek to hold the defendant liable for harassment by both co-workers and supervisors.  A plaintiff demonstrates employer liability for co-worker harassment by showing that her employer "knew or should have known of the charged . . . harassment and failed to implement prompt and appropriate corrective action."  *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999). In contrast, an employer is subject to vicarious liability for an actionable hostile work environment created by a supervisor with immediate or successively higher authority over a victimized employee.  *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 777 (1998)).

Where no adverse employment action has been taken against the plaintiffs, "the employer may raise an affirmative defense to liability by proving, by a preponderance of the evidence, that (1) it exercised reasonable care to prevent and correct promptly any racially harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of corrective opportunities provided by the employer."  *Jackson v. Quanex Corp.*, 191 F.3d 647, 663 (6th Cir. 1999) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

establish that the plant-wide environment was hostile to a reasonable plaintiff, "issues as to whether a given individual perceived the environment to be hostile would remain." *Elkins*, 219 F.R.D. at 425-26 (finding that "[t]he need to inquire into individual perceptions of the varying behaviors alleged by plaintiffs . . . makes a class action an inappropriate method by which to resolve the claims of the [plaintiffs]").

Similarly, in *Levels*, the United States District Court for the Northern District of Ohio denied a plaintiff class's motion for 23(b)(3) certification of its race-based hostile work environment claims because, after considering the individual nature of the conduct complained of, the disparity among the individuals accused of perpetrating the harassment, and the "lack of similarity of damages involved," it found that "common questions do not predominate over individual issues." *See Levels v. Akzo Nobel Salt, Inc.*, 178 F.R.D. 171, 180 (N.D. Ohio 1998); *see also Adler v. Wallace Computer Servs.*, 202 F.R.D. 666, 672 (N.D. Ga. 2001) (indicating that, while a defendant's pattern and practice of discrimination "may be relevant in a particular case . . . it does not establish that the [defendant] discriminated against each member of the putative class" and denying the plaintiffs' motion for 23(b)(3) certification of their hostile work environment claims where "[a]dditional plaintiff-specific issues could be raised with regard to the [hostile work environment] claim . . . especially since that claim requires a showing that the employee perceived the environment to be abusive"); *Miller v. Hygrade Food Prods. Corp.*, 198 F.R.D. 638, 644 (E.D. Pa. 2001) (denying 23(b)(3) certification of plaintiffs' hostile work environment claims in part because the court found that individual issues predominated over class ones where "the putative class members were exposed to the alleged discrimination in

23

varying ways, by different people, for different amounts of time and experienced different injuries").

In contrast, at least one court—the United States District Court for the Northern District of Illinois—has certified hostile work environment claims under Rule 23(b)(3).  *See Warnell v. Ford Motor Co.*, 189 F.R.D. 383, 387-88 (N.D. Ill. 1999); *Markham v. White*, 171 F.R.D. 217, 224 (N.D. Ill. 1997).  In *Warnell*, that court relied on the Seventh Circuit's comment that "welcome sexual harassment is an oxymoron" and found that "the required [23(b)(3)] showing [would] not call for individualized hearings for each class member" in a sexual harassment, pattern-or-practice case where the court "d[id] not think that the law require[d] . . . a woman to introduce further evidence that she [found] it subjectively hostile to be . . . subjected to [the discriminatory] conduct that the plaintiffs [t]here allege[d] [was] widespread and pervasive at [the defendant's] plants").  *See Warnell*, 189 F.R.D. at 387-88 (quoting *Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d 1007, 1008 (7th Cir. 1994)).  In *Markham*, the court found that common issues prevailed in a hostile work environment case in which each of the plaintiffs complained of nearly identical discriminatory comments made by the defendants at a number of similar training seminars.  *See Markham*, 171 F.R.D. at 224 (noting that "the allegations as to [the] Individual Defendant's conduct at the seminars in question shows that the same or substantially similar comments were made at each").

The individual factual scenarios presented in this case render it distinguishable from *Warnell*[4] and *Markham*, which are two of the cases upon which the plaintiffs rely.  (*See* Docket

---

[4]Unlike *Warnell*, in which the district court seemed to somewhat diminish the subjective requirements of a hostile work environment claim, this court is bound by the Sixth Circuit's directive that, when analyzing a hostile work environment claim, a court must consider whether

24

No. 250 at 62.)   Indeed, the case at hand presents a situation more like those presented in *Elkins* and *Levels*.   Like the plaintiffs in those cases, the plaintiffs here complain of harassment that was perpetrated by both coworkers and supervisors.  (*See* Docket No. 250 at 29-37); *see also Elkins*, 219 F.R.D. at 424; *Levels*, 178 F.R.D. at 177.  While the plaintiffs in each of these cases were employed at a single geographic location, *e.g.*, one assembly plant, they all worked in various places within that location and interfaced with different coworkers and supervisors.  (*See* Docket No. 280 at 8); *see also  Elkins*, 219 F.R.D. at 424; *Levels*, 178 F.R.D. at 177.  Additionally, like the plaintiffs in *Elkins* and *Levels*, the plaintiffs here allege that they were subjected to a wide array of discriminatory acts, for which the defendant may choose to present various affirmative defenses.  (*See* Docket No. 280 at 9-10); *see also Jackson*, 191 F.3d at  663 (6th Cir. 1999) (outlining the affirmative defenses available to an employer accused of sexual harassment); Elkins, 219 F.R.D. at 424-27; *Levels*, 178 F.R.D. at 177.

Simply put, even if the plaintiffs are able to establish that the defendant subjected them to a common practice of failing to promptly and appropriately respond to their allegations of racial harassment, so many individual disparaties exist here that common issues cannot be accurately said to prevail.  *See Butler v. Sterling, Inc.*, No. 98-3223, 2000 WL 353502, at *6 (6th Cir. 2000) (unpublished) (noting that the advisory committee notes to Rule 23(b)(3) "advise against class certification where a defendant has a defense to liability that will vary with each individual class member") (citing Fed. R. Civ. P. 23(b)(3) advisory committee notes); *O'Neal v. Wackenhut Servs., Inc*., No. 3:03-CV-397, 2006 WL 1469348, at *23 (E.D. Tenn. May 25, 2006)

---

the victim subjectively regarded his or her environment as hostile.  *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

25

(unpublished) (noting that Rule 23(b)(3) certification is unavailable where there is a likelihood that significant individualized questions would be present) (internal quotation omitted); *Reeb v. Ohio Dep't of Rehab. & Corr.*, 203 F.R.D. 315, 324 (S.D. Ohio 2001) (finding that, "[a]lthough the Plaintiffs . . . presented a common question of law," this question did not predominate where "individual issues regarding both claims and defenses will dominate," in part because "individualized proof will be necessary for each plaintiff to prove compensatory damages"); *see also Reeb*, 435 F.3d at 645 (indicating the recognition by the Sixth Circuit of the district court's 23(b)(3) determinations in *Reeb*). As such, the plaintiffs have failed to meet Rule 23(b)(3)'s predominance requirement.

### 2. The plaintiffs have not demonstrated that class treatment is superior to other methods that are available for resolving this controversy.

Taking into account Rule 23(b)(3)'s non-exhaustive list of factors that a court should consider in making a determination under this rule, the court finds that the plaintiffs have not established that class treatment is the superior method for the fair and efficient adjudication of this case. *See* Fed. R. Civ. P. 23(b)(3) (listing, among other considerations, the interest of members of the class in individually controlling the prosecution or defense of separate actions and the difficulties likely to be encountered in the management of a class action); *Amchem Prods., Inc.*, 521 U.S. at 615-16.

While the plaintiffs assert that a class action will save judicial resources, prevent the likelihood of inconsistent verdicts, and shelter the plaintiffs from the burden of "the cost and risk of individual trials on liability and remedy," the court notes that, even if a single fact-finder could make the determinations attendant to the "liability phase" of the plaintiffs' case, which

26

they purport to bring under a pattern-or-practice theory, the issues relevant to the "relief phase"
would remain. *See Bremiller*, 195 F.R.D. at 26. In accordance with the scope of this second
phase, the fact-finder would have to evaluate whether each plaintiff subjectively viewed his or
her work environment as hostile, which likely would require the revisiting of much of the
evidence that was considered in the first phase, as well as a series of mini-trials that would lead
to the inefficient use of judicial resources.[5] *See id.*; *see also O'Neal*, 2006 WL 1469348, at *23
(rejecting 23(b)(3) certification where the court would be required to conduct mini-trials in order
to determine whether each class member's claim had merit); *Elkins*, 219 F.R.D. at 425 (raising
concerns that class certification in a hostile work environment case would require the revisiting
of evidence). Thus, "the economy to be achieved by class treatment of the stated issues is more
than offset by the individualization of numerous issues relevant only to a particular plaintiff."
*Ilhart v. A.O. Smith Corp.*, 168 F.R.D. 613, 619 (S.D. Ohio 1996).

Moreover, if the fact-finder were to determine that the plant-wide environment was not a
hostile environment, members of the class who may have been subjected to a hostile
environment in a particular area of the plant during a certain time period would be precluded
from pursuing their claims. *See Elkins*, 219 F.R.D. at 425 (raising similar concerns). Finally, as
indicated by other courts confronted with Title VII and Section 1981 claims, "this is not a

---

[5]Any suggestion that these claims be bifurcated and heard by separate fact-finders likely
would raise serious Seventh Amendment concerns. *See Bacon*, 205 F.R.D. at 489 (noting that a
proposal to try liability and punitive damages issues in one trial and compensatory damages
issues in a subsequent one would violate the Seventh Amendment) (citing *Allison v. Citgo
Petroleum Corp.*, 151 F.3d 402, 417-18 (5th Cir. 1998)); (*see also* Docket No. 250 at 58 n.20
(reflecting the plaintiffs' arguments that "the question the Court should consider when
contemplating this class certification motion is not *whether* a Title VII class action which
includes compensatory and punitive damages may be certified, but simply *how* such cases can
best be managed")).

situation where there exists 'negative value suits.'" *See O'Neal*, 2006 WL 1469348, at *23. Rather, under these statutes, "[a]n individual plaintiff with a meritorious case has a panoply of remedies available, including compensatory damages, as well as attorneys['] fees and costs." *Id.*

Each of the factors discussed above weighs against class treatment. As such, the plaintiffs have not demonstrated that such treatment is the superior method for the resolution of their claims. Thus, because the plaintiffs have failed to establish that either commonality or superiority exists with respect to their class claims, their case is not amenable to 23(b)(3) certification.

### C. The plaintiffs have not demonstrated that hybird certification is a viable option in this case.

The plaintiffs encourage the court to consider the possibility of the certification of a "hybrid" class, *i.e.*, one in which the court certifies the injunctive aspects of the suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3). (*See* Docket No. 250 at 64.) As noted above, plaintiffs' claims are not amenable to class certification under either rule. Thus, for this reason, among others, hybrid certification is not a viable option in this case.

### CONCLUSION

Although the plaintiffs have demonstrated that they meet the requirements of Rule 23(a), they have not shown that their claims are appropriate for certification under either Rule 23(b)(2)

or Rule 23(b)(3). As such, the plaintiffs' motion for class certification will be denied.[6] The court notes that this denial of the plaintiff's motion for class certification does not mean that the plaintiffs will ultimately be denied relief if they can prove their claims. Rather, today's ruling affects only the appropriate model for the adjudication of these claims.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[6]The plaintiffs have moved to strike three declarations offered by the defendant. (*See* Docket No. 287 at 1; Docket No. 288 at 1 (asking the court to strike the declarations of Pierre Hill, Bea Rucker, and Jerry McGowan).) While the defendant has responded to this motion, the court need not rule on it because it did not rely on any of these declarations in arriving at its decision. (*See* Docket No. 289.) This motion, therefore, will be denied as moot.