IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LOUVENIA ARMSTRONG, *et al.*, ) | |
| ) | Case No. 3:03-cv-01250 |
| Plaintiffs, ) | Judge Trauger |
| ) | |
| v. ) | |
| ) | |
| WHIRLPOOL CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Pending before the court is the defendant's Motion to Bar Amendment of Plaintiffs' Complaint (Docket No. 481), to which the plaintiffs have responded (Docket No. 488). For the reasons discussed herein, this motion will be denied.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On December 24, 2003, the plaintiffs filed their class-action Complaint in this Title VII/Section 1981 matter, seeking to represent a Rule 23(b)(2) class of current and former African-American employees of defendant Whirlpool Corp. who claimed, among other things, that their workplace, Whirlpool's La Vergne, Tennessee facility, was a racially hostile work environment for which Whirlpool is liable. (Docket No. 1; Docket No. 165 at 41.) While they repeatedly amended their Complaint, for the first few years that this litigation was proceeding, the named plaintiffs clearly sought compensatory damages on behalf of themselves and the proposed class. (*See* Docket No. 165 at 42.)

On January 24, 2006, the Sixth Circuit decided *Reeb v. Ohio Department of*

1

*Rehabilitation & Correction*, 435 F.3d 639 (6th Cir. 2006), which held that Title VII plaintiffs cannot maintain a Rule 23(b)(2) class action and seek compensatory damages. Specifically, the court stated:

> [B]ecause of the individualized nature of damages calculations for Title VII plaintiffs and the ability of those plaintiffs to bring individual actions, the claims for individual compensatory damages of members of a Title VII class necessarily predominate over requested declaratory or injunctive relief, and individual compensatory damages are not recoverable by a Rule 23(b)(2) class. . . . We emphasize, however, that this holding does not foreclose all Title VII class actions. Plaintiffs now have the choice of proceeding under Rule 23(b)(3) in an action for money damages or in an action under Rule 23(b)(2) for declaratory or injunctive relief alone or in conjunction with compensatory and punitive damages that inure to the group benefit. And, as always, plaintiffs remain free to bring Title VII actions as individuals.
> *Id.* at 651.

In light of *Reeb*, on July 17, 2006, the plaintiffs amended their Complaint (the Third Amended Complaint) to seek only compensatory damages for the harassment claims to the extent that they "inure to the group benefit." (Docket No. 242 at 38.) On March 1, 2007, citing *Reeb*, the court denied the plaintiffs' motion for Rule 23(b)(2) class certification because an individualized inquiry into the circumstances of each class member would be required before the court could assess the compensatory damages to which each class member was entitled. (Docket No. 290 at 18.) The court also ruled that class certification was not appropriate under Rule 23(b)(3). (*Id.* at 28.)

On June 13, 2007, the plaintiffs sought leave to renew the class certification motion. (Docket No. 307)("Motion to Renew"). In this motion, the plaintiffs sought to represent a Rule 23(b)(2) class for declaratory and injunctive relief, and, if the court would allow, punitive damages. (Docket No. 307 Ex. 3 at 2, 6.) In the Motion to Renew, the plaintiffs stated that they were "dropping all requests for monetary or compensatory damages" and that they "no longer

2

Case 3:03-cv-01250  Document 489  Filed 10/05/10  Page 2 of 9 PageID #: 12183

seek class-wide compensatory relief." (*Id.*) On August 21, 2007, the court denied the Motion to Renew because the plaintiffs had "neither adduced additional facts relevant to class certification nor produced evidence of changed circumstances that would render class certification appropriate." (Docket No. 313 at 5.) Rather, the court noted that the plaintiffs were merely "altering the forms of relief that they seek . . . in a tactical attempt to navigate around *Reeb*." (*Id.*)

On October 5, 2007, the plaintiffs filed a motion for leave to amend their Complaint. (Docket No. 328)("Motion for Leave"). This version of the Complaint (the Fourth Amended Complaint) would abandon all class claims and seek compensatory damages for the seven individual plaintiffs. (Docket No. 328 Ex. 2 at 34.) The defendant argued in opposition that the plaintiffs had waived their compensatory damage claims in the class certification process. (Docket No. 332.) The court never addressed the merits of these arguments, as, on September 30, 2008, the court granted Whirlpool's motions for summary judgment against all seven plaintiffs and dismissed this case. (Docket No. 435.) The Motion for Leave was denied as moot. (*Id.*)

On January 26, 2010, the Sixth Circuit affirmed much of the court's summary judgment ruling but held that a reasonable jury could find that the environment at Whirlpool was racially hostile for plaintiffs Armstrong, Beasley, and Cash. (Docket No. 452 at 18.) Therefore, on remand, the court considered whether summary judgment was appropriate for Whirlpool on the issue of employer liability, an issue that the court did not reach in the September 30, 2008 Memorandum. (Docket No. 459.) On August 16, 2010, after the parties re-briefed the employer liability issue, the court denied summary judgment for Whirlpool and set the hostile work

3

environment claims of Armstrong, Beasley, and Cash for a February 22, 2011 trial. (Docket Nos. 479-80.)

At an August 25, 2010, status conference, defense counsel raised the notion that the plaintiffs' compensatory damage claims "are no longer before this Court," in light of the plaintiffs' "tactical attempt to navigate around *Reeb*." (Docket No. 481 at 3.) The court ordered that the parties brief this issue, and, on September 8, 2010, the defendant filed the pending motion. (Docket No. 481). In response, the plaintiffs argue that they should be allowed to file an Amended Complaint (the Fourth Amended Complaint) that would seek compensatory damages on behalf of the three remaining plaintiffs. (Docket No. 488 at 1.) The proposed Fourth Amended Complaint is attached to the plaintiffs' response and, other than removing parties and claims that have been dismissed, it is substantively identical to the Amended Complaint that the plaintiffs sought to file in October 2007.[1] (*See* Docket No. 488 Ex. 5 and Docket No. 328 Ex. 2.)

## ANALYSIS

**I.     Leave to Amend – Standard of Review**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). The district court is to consider several factors when determining whether to grant a motion for leave to amend, such as "undue delay in filing, lack of notice to the opposing party, bad faith by the

---

[1] Indeed, in their response, the plaintiffs state that they are renewing the Motion for Leave filed in October 2007. (Docket No. 488 at 1.) Given that the defendant responded to the Motion for Leave and advanced the pending motion (which asserts many of the same arguments), the plaintiffs' "renewed motion" does not require a response from the defendant to be evaluated.

4

moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458 (6th Cir. 2001). Delay in filing, by itself, is not a sufficient reason to deny a motion for leave to amend. *Id.* Generally, in order to deny a motion for leave to amend on "prejudice" grounds, the prejudice against the non-movant must be "significant"; however, the prejudice showing is more easily made by the non-movant when the motion for leave to amend is made later in the proceedings, for instance, after discovery has closed. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

## II. The Motion to Bar Amendment

The defendant's primary argument is that the plaintiffs have been playing "tactical game[s]" with their pleadings based upon what is "legally expedient" and "most lucrative" at the moment, not based upon the actual merit of their allegations. (Docket No. 481 at 4-6.) Also, the defendant maintains that the plaintiffs clearly "dropped" their compensatory damages claims during the class certification process. (*Id.* at 3.) In addition to the Motion to Renew, the defendant points to two other instances in which the plaintiffs indicated that they were altogether abandoning compensatory damages as a remedy – at a June 14, 2007 case management conference to consider the plaintiffs' Motion to Renew and a June 20, 2007 letter from plaintiffs' counsel to defense counsel, in which counsel states that the plaintiffs are "dropping their demand for compensatory damages." (*Id.* at 2; Docket No. 481 Ex. 2.)

The defendant also argues that it would be prejudiced if the plaintiffs were allowed to amend their Complaint yet again, because "no discovery has been conducted in this case for over two years," and, when discovery was ongoing, it was "largely limited by Court Order to issues

5

concerning class certification." (Docket No. 481 at 6.) The defendant charges that allowing this amendment would force discovery to be re-opened "to examine the individual plaintiffs' alleged harm," which would "unduly prejudice" the defendant because it has been several years since the relevant events occurred, and "plaintiffs cannot now accurately separate out the difference between the alleged effects of the Whirlpool work environment and the stresses of everyday life that have accumulated in the years since each plaintiff ceased working for Whirlpool." (*Id.* at 6-7.)

In response, the plaintiffs claim that they "never waived their right to claim compensatory damages for their individual actions." (Docket No. 488 at 1-2.) That is, while in some correspondence plaintiffs' counsel may have casually and broadly used the term "dropped" in reference to the compensatory damages claims, the actual Memorandum in support of the Motion to Renew states that "the plaintiffs no longer seek *class-wide* compensatory relief." (Docket No. 307 Ex. 3 at 6)(emphasis added). Moreover, once the Motion to Renew was denied and class treatment was no longer viable, the plaintiffs, a few months prior to the January 4, 2008 close of discovery, sought leave to amend their Complaint to remove the class claims and re-affirm that they were seeking individual compensatory damages. (Docket Nos. 327-28.) Further, the plaintiffs argue that, for as long as class certification was a viable option, they had a duty to represent the best interests of the class and make every effort to obtain class certification in light of *Reeb* and the court's initial denial of the motion for class certification. (Docket No. 488 at 7.)

On the prejudice issue, the plaintiffs argue that the defendants will not suffer "significant" prejudice from an amended Complaint because the defendant has "already

6

conducted discovery concerning Plaintiffs' compensatory damages." (Docket No. 488 at 9.) Indeed, the defendant took the depositions of the three remaining plaintiffs in February/March 2006, while the plaintiffs' Complaint clearly sought compensatory damages (Docket No. 165 at 41), and the plaintiffs attach about 40 pages of testimony from those depositions in which the plaintiffs testified about the emotional and physical toll that the workplace discrimination had upon them. (Docket No. 488 Ex. 2.) Moreover, given that every Complaint has sought, in some way or another, compensatory damages, the defendant cannot reasonably argue that it was not on notice of the plaintiffs' compensatory damages claims. (Docket No. 488 at 9.)

In sum, given that: (1) the defendants have taken discovery on the compensatory damages issue; (2) the plaintiffs only "dropped" the compensatory damages claim to serve the interests of the class; and (3) the plaintiffs almost immediately sought leave to re-assert the compensatory damages claims after final denial of class certification (about three years ago), the plaintiffs argue that the defendant cannot fairly claim prejudice or contend that the plaintiffs have acted in bad faith, caused undue delay or acted in any other manner that, in equity, dictates that leave to amend should be denied. (*Id.* at 10-12.)

In light of the favorable legal standard and the facts of this matter, the plaintiffs should be granted leave to amend. First, the court does not view the "dropping" of the compensatory damages claims as a waiver of the right to assert those claims. The plaintiffs stated that they were fully dropping those claims in the context of seeking leave to renew a class certification motion – leave that the court denied. The plaintiffs never amended their Complaint to remove compensatory damages claims or otherwise indicated that, in the absence of class certification, they would not seek compensatory damages. When viewed in this context, the plaintiffs were

7

plainly seeking, as something of a last-ditch effort, to better the possibility of class certification; they were not waiving or abandoning these claims on an individual basis. Indeed, implicit in the language in *Reeb* that "as always, plaintiffs remain free to bring Title VII actions as individuals" is the understanding that a failed effort to bring a class action should not result in losing one's rights as an individual litigant. Therefore, the defendant's suggestion that the plaintiffs should be bound by the position that they took in the Motion to Renew is misplaced.

Moreover, the defendant cannot reasonably claim that it did not have a full and fair opportunity to address the remaining plaintiffs' compensatory damages claims during their 2006 depositions. Again, the operative Complaint at that time sought compensatory damages (Docket No. 165 at 42), and the defendant elicited significant testimony from each of the remaining plaintiffs regarding the injuries and damages that each plaintiff had suffered. (Docket No. 488 Ex. 2.) The defendant's protestations about the need for additional discovery into compensatory damages are not supported by the record.[2]

---

[2] The defendant also relies on *Dykstra v. Wayland Ford, Inc.*, 240 Fed. Appx. 14 (6th Cir. 2007). *Dykstra* was a protracted litigation in which, for the first several years, 27 individual plaintiffs sought statutory damages under the Truth In Lending Act but did not seek actual damages. *Id.* at 15. After a Sixth Circuit ruling eliminated the possibility of statutory damages, the plaintiffs, for the first time, sought to add a claim for actual damages, but the district court denied the plaintiffs' motion for leave to amend. *Id.* The Sixth Circuit ruled that the district court did not abuse its discretion in so ruling. *Id.* at 16-17. The Sixth Circuit focused on the fact that the plaintiffs had made a strategic choice not to seek actual damages until they absolutely had to, that the defendants had devoted "substantial resources" to defending the statutory damages claim, and that ample discovery would be required into the actual damages of the 27 plaintiffs. *Id.* Clearly, this case is readily distinguishable, as the plaintiffs have sought compensatory damages from the outset, and discovery into compensatory damages was conducted. The defendant also cites two Sixth Circuit cases for the proposition that "this Court should not allow Plaintiffs to amend their Complaint yet again." (Docket No. 481 at 7 citing *Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994); *Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003)). Other than being Rule 15(a) cases, these cases offer little specific guidance in terms of whether the court should allow the plaintiffs to amend their Complaint, as both of these cases involved a late-stage effort by the plaintiff to add entirely new parties or theories of liability –

Again, leave to amend is to be "freely" granted, absent a showing that, in fairness, the movant should not be allowed to amend. Here, the plaintiffs seek to file an Amended Complaint that would bring the claims and parties in line with the rulings of this court and the Sixth Circuit and that would re-assert a claim for individual compensatory damages. Given that the defendants have long been on notice of the compensatory damages claims and took discovery on them, the fact that the plaintiffs, several years ago, indicated that they would abandon compensatory damages to obtain class certification is plainly insufficient to preclude the plaintiffs from amending their Complaint now. The defendant's Motion to Bar Amendment of Plaintiffs' Complaint (Docket No. 481) is **DENIED,** and the plaintiffs should file their Fourth Amendment Complaint (Docket No. 488 Ex. 5) within two days of the entry of this Order.

It is so Ordered.

Enter this 5th day of October 2010.

_____
ALETA A. TRAUGER
United States District Judge

---

something not present here.