# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LOUVENIA ARMSTRONG, ) | |
| HENRY BEASLEY, and LARSEN CASH, ) | |
| ) | Case No. 3:03-cv-01250 |
| Plaintiffs, ) | Judge Trauger |
| ) | |
| v. ) | |
| ) | |
| WHIRLPOOL CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Pending before the court is the defendant's Motion to Strike Portions of Plaintiffs' Corrected Fourth Amended Complaint (Docket No. 493), to which the plaintiffs have responded (Docket No. 495), and the defendant has filed a reply in support (Docket No. 500.) For the reasons discussed herein, this motion will be denied. The court also offers some guidance on the evidentiary issues raised by the motion.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As ordered by the court, the plaintiffs filed their Fourth Amended Complaint on October 6, 2010. (Docket Nos. 489-90.) As there was material improperly included in the Fourth Amended Complaint, on October 25, 2010, the plaintiffs moved for leave to amend the Fourth Amended Complaint and attached a proposed Corrected Fourth Amended Complaint. (Docket No. 491 Ex. A.) Simultaneously with filing its Answer to the Corrected Fourth Amended Complaint, defendant Whirlpool Corp. filed the pending Motion to Strike. (Docket No. 493.)

The Motion to Strike argues that allegations contained in six paragraphs of the Corrected

1

Fourth Amended Complaint should be stricken from that pleading because "they are a collection of disparate treatment and retaliation allegations directed at purported discriminatory working conditions, discipline, hiring, promotion and demotion decisions, and pay practices," and, therefore, they are improper in this case that only involves the three remaining plaintiffs' claim that their work environment at the defendant's LaVergne, Tennessee plant was a racially hostile one. (Docket No. 494 at 2.) Primarily, the paragraphs at issue allege:

> 1) Plaintiff Armstrong observed that Whirlpool employs very few African-American supervisors and front office personnel at the LaVergne plant; also, African-American employees, including Armstrong and plaintiff Beasley, received less training and opportunity for promotion than Caucasian employees with equal or lesser qualifications (Docket No. 491 Ex. 1 at 8-10);
>
> 2) Armstrong received more severe discipline than Caucasian employees for the same conduct, while receiving less break time and more stringent supervision. (*Id.* at 8.)
>
> 3) African-American employees, including plaintiff Cash, have been demoted over less qualified Caucasian employees. (*Id.* at 12.) Additionally, Cash witnessed African-American employees being subject to "more severe disciplinary practices and [a] refusal to accommodate [] medical restrictions." (*Id.* at 12-14.)
>
> 4) Witness and plant employee Lynn McCray observed racially hostile treatment toward African-Americans at the plant. (*Id.* at 14.)

In its initial two-page argument filed along with the motion, the defendant broadly claimed that these allegations should be stricken, given that the plaintiffs assert only a hostile work environment claim and do not assert, as the court has recognized, independent disparate treatment claims or valid retaliation claims. (Docket No. 494 at 2-3.)

Stated this way, the defendant's Motion to Strike should be denied. Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which states that a court may strike from a

2

pleading "any redundant, immaterial, impertinent, or scandalous matter." The Sixth Circuit has held that striking factual material from a pleading is a remedy to be used when the material to be stricken has "*no possible relation* to the controversy." *Parlak v. U.S. Immigration and Customs Enforcement*, 2006 WL 3634385, *1 (6th Cir. April 27, 2006)(quoting *Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir. 1953)(emphasis added). The defendant does not apply this standard or suggest that the allegations of preferential treatment of Caucasian employees have "no possible relation" to the plaintiffs' hostile work environment claim. Therefore, the defendant's motion will be denied.

That said, as indicated by the plaintiffs' 19-page response, the defendant's reply, and the plaintiffs' subsequent request for oral argument (Docket No. 502), the defendant's motion touches on a lurking evidentiary issue in this case that is set for trial in February 2011. That is, whether, despite not asserting traditional, Title VII disparate treatment claims, the plaintiffs may still offer evidence showing that they were treated less favorably due to their race.

The plaintiffs argue that, because a hostile work environment claim involves an analysis of the "totality of the circumstances," all "alleged instances of racially harassing conduct, including disparate-treatment like evidence, should be considered" in evaluating a hostile work environment claim. (Docket No. 495 at 4-11 citing *e.g. Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 470 (6th Cir. 2009)(upholding jury verdict in favor of plaintiff where the evidence showed that, in addition to specific racial slurs and comments, the supervisor generally treated African-American employees and customers unfavorably); *Williams v. GM*, 187 F.3d 553, 562-63 (6th Cir. 1999)(whether harassment is sufficiently abusive can only be determined by the "totality of circumstances," not allegation-by-allegation).

The plaintiffs argue that they were subject to harsher jobs, more discipline, and stricter supervision than their Caucasian coworkers and that this evidence is not only "directly relevant to and probative of hostile work environment claims" and "critical background evidence," but it is also admissible as "state-of-mind evidence to rebut any claims by Whirlpool that plaintiffs should have complained more or otherwise relied more heavily on internal mechanisms of reform." (*Id.* at 9-11, 14-16; *see also Jackson v. Quanex Corp.*, 191 F.3d 647, 653-54 (6th Cir. 1999)(finding that plaintiff had a triable hostile work environment claim and, along with considerable evidence of racial slurs, threats, and other harassment, noting evidence that African-Americans were treated differently from Caucasian employees "when it came to enforcement of [minor] company rules" and evidence that opportunities for training and advancement were barred by Caucasian employees).

The plaintiffs also maintain that the jury is entitled to hear evidence that Whirlpool "consistent[ly] hir[ed] whites rather than blacks for supervisory positions" at the plant so that the jury may see that the plant had a "racial hierarchy [] that lent itself to indifference toward racism." (*Id.* at 13.) Without this evidence, the plaintiffs argue, the jury will not "understand[] how the insidious racial hostility could fester at the LaVergne plant for so long." (*Id.*)

In their reply, the defendant argues that the court, in essence, has already resolved this issue in its favor. (Docket No. 500.) This argument requires a brief explanation of the procedural history. On September 30, 2008, the court granted the defendant's Motion for Summary Judgment and dismissed this case. (Docket No. 435.) In that Memorandum, the court, after determining that plaintiff Armstrong had not sufficiently established a hostile work environment claim, discussed that Armstrong had made "a number of allegations" that she and

4

other African-American employees were "treated differently" than Caucasian employees. (Docket No. 434 at 9.) After noting that there was "scant evidence" supporting the notion that the "perceived slights were at all motivated by race," the court went on to say that "[m]oreover, these incidents do not constitute the type of discriminatory intimidation, ridicule or insult that gives rise to a hostile work environment claim, and Armstrong has not asserted any other claims," such as an independent Title VII disparate treatment claim. (*Id.* at 10.)

On appeal, the Sixth Circuit concluded that, as to the plaintiffs here, there was a genuine issue of fact as to whether the work environment was racially hostile. (Docket No. 452.) This conclusion was based upon evidence of racial harassment by Dale Travis, persistent graffiti at the plant and evidence of racially motivated slurs and actions (such as a supervisor disposing of a birthday cake because it was made by an African-American), all of which were directed at the plaintiffs or of which the plaintiffs were aware. (*Id.* at 17.) The opinion did not indicate that this court erred in stating that disparate treatment allegations do not generally support a hostile work environment claim. (*See id.*) The Sixth Circuit did re-affirm, however, that a plaintiff had to be at least aware of the harassing conduct for that conduct to be relevant to the plaintiff's hostile work environment claim. (*Id.* at 20-21.)

Following remand, the defendant moved for summary judgment on the unresolved issue of employer liability; the court denied that motion, allowing this case to move forward toward trial. (Docket No. 479.) In a footnote in that August 16, 2010 Memorandum, the court stated: "the plaintiffs make occasional reference to disparate treatment in the workplace in terms of work assignments and breaks. The court dismissed these disparate treatment allegations in the September 30, 2008 Memorandum as inconsistent with a hostile work environment claim, and

5

the court does not read the Sixth Circuit's opinion as reviving this aspect of the plaintiffs' claims." (Docket No. 478 at 7)(internal citation omitted).

In light of all this, the defendant argues that the court has already concluded that disparate treatment allegations have no place in this case, and, therefore, the evidence alluded to in the challenged provisions of the Corrected Fourth Amended Complaint should be excluded at trial. (Docket No. 500 at 3.) Also, given the Sixth Circuit's explicit re-affirmation that the plaintiff must at least be aware of the harassing conduct, the observations of non-party Lynn McCray "have no bearing on this case." (*Id.* at 4.) Finally, the defendant warns that, if this evidence is not excluded, "mini-trials" on the propriety of individual employment decisions will lengthen the trial and distract the jury from the key issues. (*Id.*)

Each side has a reasonable argument.[1] On the one hand, the plaintiffs are correct that a work environment must be judged holistically and, certainly, to the extent that the plaintiffs were victims of racially motivated inequitable treatment, such evidence could, depending on its precise nature, *help* build the case for a hostile work environment. For instance, Armstrong alleges that Caucasian employees would frequently "walk[] off the line" leaving her do their work, and, if something went wrong, she "was the one scolded" and there were no consequences for the Caucasian employees. (Docket No. 495 at 12.) Certainly, if offered at trial, this evidence of inequitable treatment would be relevant to Armstrong's claim that she was subject to a

---

[1] However, the defendant's reliance on the court's previous statements regarding the disparate treatment allegations is somewhat misplaced because the court was not addressing admissibility. A clear distinction exists between (1) stating that certain evidence is not generally of the type used to establish a hostile work environment claim at the summary judgment stage (or alluding to the fact that the plaintiffs do not maintain independent disparate treatment claims) and (2) holding that, at trial, the plaintiffs, in building their hostile work environment claim, may not use *any evidence* that they were treated less favorably than their Caucasian co-workers.

6

racially hostile work environment. *See Jackson*, 191 F.3d at 653-54 (evidence of Caucasian employees refusing to work with African-American plaintiff supported hostile work environment claim).

That said, the key issue in any hostile work environment claim is whether there was "harassment," which is usually caused by "abusive" and "offensive" language and "physically threatening or humiliating" gestures and actions that "unreasonably interfere" with the employee's work performance. *Clark v. UPS*, 400 F.3d 341, 351 (6th Cir. 2005). Such a focus strongly suggests that a hostile work environment trial should not become deeply involved with issues such as how promotions were allocated, disparate levels of training within the plant, criteria for demotion, and how, historically, a "racial hierarchy" emerged within the plant. Again, the Sixth Circuit focused on racial *harassment* by Dale Travis, persistent graffiti at the plant, and evidence of racially motivated slurs and actions in finding that these plaintiffs had a triable hostile work environment claim – not on the plaintiffs' disparate treatment allegations.

Also, while the plaintiffs rely on *Jackson v. Quanex* in support of their argument that disparate treatment evidence is broadly welcomed in a hostile work environment case, a close examination of the evidence in that case shows that, even where the court was discussing inequitable enforcement of company rules and inequitable opportunities for training and advancement, there was a clear "tether" between that evidence and racial harassment. For instance, Caucasian employees explicitly refused to train and work with African-American employees because of their race and sabotaged the work efforts of African-American employees, supervisors addressed African-American workers with their backs to them, and African-Americans were obviously singled out for strict enforcement of minor company rules. 191 F.3d

653-54. While these actions resulted in inequitable training and development opportunities, the evidence was "at home" in a hostile work environment case because the actions were clearly harassing and belittling.

Obviously, trials are fluid, not entirely predictable, and often involve testimony that is on the outskirts of what is centrally crucial to a claim. Therefore, this is not an issue where the court can, at this stage, do much more than provide general guidance.

To the extent that there are evidentiary objections along these lines at trial, the court will rely on certain guideposts. On the one hand, the evidentiary rules regarding relevancy and the "totality of the circumstances" test suggest that the jury is entitled to hear a broad swath of evidence in order to gain a full and complete understanding of the plaintiffs' claim that they were subject to a hostile work environment. On the other hand, a hostile work environment claim is distinct from a disparate treatment claim, and, when considering the evidence used to establish a hostile work environment claim, there should be some direct "tether" between the evidence offered to prove the claim and workplace harassment. Moreover, guided by Fed. R. Evid. 403 and considerations of judicial economy and fairness, it would be inappropriate to allow the trial of this matter to become bogged down in detailed testimony regarding the criteria for promotions and demotions and how the "racial hierarchy" at the plant developed. Surely, the plaintiffs can offer testimony regarding the difficulties that they faced in reporting racial harassment to management without a detailed history of how the various supervisors came to occupy their positions.

Also, the parties should be guided by the clear holding of the Sixth Circuit that if the plaintiff was not aware of the harassing conduct, he or she may not rely on that conduct to build

the claim of a hostile work environment. *Armstrong v. Whirlpool*, 363 Fed. Appx. 317, 328 (6th Cir. 2010). Finally, the motion *in limine* deadline is not until January 27, 2011 (Docket No. 480 at 2), and to the extent that, in the intervening period, the parties become aware of controlling authority that provides a better guide for the court's evidentiary decisions than is offered here, the parties may bring that authority to the court's attention through a proper motion *in limine*.

The defendant's Motion to Strike Portions of Plaintiffs' Corrected Fourth Amended Complaint (Docket No. 493) is **DENIED**. As a housekeeping matter, the plaintiffs' Motion for Leave to File a Corrected Fourth Amended Complaint (Docket No. 491) is **GRANTED**.

It is so Ordered.

Enter this 2nd day of December 2010.

ALETA A. TRAUGER
United States District Judge